NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Matter of the Necessity for the Hospitalization of | ) ) ) | Supreme Court No. S-17940 |
| A.S. | ) ) | Superior Court No. 3AN-20-02099 PR |
| | ) ) ) ) | <u>MEMORANDUM OPINION AND JUDGMENT</u>* |
| | ) ) | No. 1909 – July 27, 2022 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Justin Gillette, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for A.S. Anna L. Marquez, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for State of Alaska.

Before: Winfree, Chief Justice, Maassen, Carney, and Borghesan, Justices. [Henderson, Justice, not participating.]

## I.  INTRODUCTION

The respondent in a civil commitment matter appeals the superior court's findings that he posed a risk of harm to others and was gravely disabled and asks us to vacate its order committing him for involuntary treatment. He argues that there was insufficient evidence to support the findings because the testifying psychiatrist's conclusions were not detailed enough to amount to clear and convincing evidence.

---

\*  Entered under Alaska Appellate Rule 214.

Because the doctor's uncontroverted testimony supplied enough detail, we affirm the superior court's order.

## II.    FACTS AND PROCEEDINGS

A.S.[1] appeals from his second involuntary commitment.[2] He was arrested and jailed on suspicion of assaulting a family member in February 2020. In October the superior court granted the Department of Corrections' petition for hospitalization and evaluation. A.S. was transported to the Alaska Psychiatric Institute (API). After a week, API staff petitioned the superior court for an order authorizing his commitment for 30 days.

Dr. Joseph Pace was the sole witness called by API at the commitment hearing. He testified that A.S. had "a psychotic disorder with delusions and grandiosity and irritable mood." Dr. Pace testified that A.S. rambled in conversation; verbally threatened bodily harm to staff; had delusions about death and bloody conspiracies; and had auditory hallucinations in response to internal stimuli.

Dr. Pace believed that A.S. posed a risk of harm to himself and others because he did not correctly perceive reality and he would remain delusional without adequate treatment. He testified that the day before the hearing A.S. had punched an API staff member in the head three times and put another in a chokehold until he turned purple. According to Dr. Pace, police were called and charges were filed against A.S. Dr. Pace attributed A.S.'s violence to his mental illness because A.S. was unable to respond rationally to the staff's attempts to de-escalate the situation.

Dr. Pace also testified that A.S. was gravely disabled because he was unable

---

[1]    The respondent previously requested that we use initials instead of a pseudonym to protect his privacy. *See In re Hospitalization of A.S.*, No. S-17579, 2021 WL 3077135, at *1 n.1 (Alaska July 21, 2021).

[2]    *Id.*

to maintain adequate hygiene and caloric intake. He described an API nurse as being "aghast" at A.S.'s weight loss and haggard appearance since his previous commitment the year before. Finally, he testified that A.S. was unable to advocate for his physical needs or organize his thoughts enough to formulate a plan to acquire basic necessities outside the hospital.

The superior court made oral and written findings and ordered A.S. committed to API for up to 30 days. Based on Dr. Pace's testimony and A.S.'s demeanor, the court found that he was "mentally ill. His symptoms include mania, delusions, thought disorders, and hallucinations." The court found A.S. was likely to cause harm because "he has threatened hospital staff and assaulted hospital staff during this admission." The court also found that A.S. was gravely disabled because "[h]is judgment is impaired," he "is not attending to his basic needs," and "his irrational and violent behavior would expose him to harm."

A.S. appeals only the superior court's findings that he presented a risk of harm and was gravely disabled. He makes two arguments with respect to both findings. First, A.S. argues that Dr. Pace merely relied on conclusory statements and did not provide sufficient detail for the court to assess the validity of those conclusions under the clear and convincing evidentiary standard. A.S. asserts that it was therefore error for the court to adopt those conclusory statements in its order. Second, A.S. argues the record does not support the superior court's legal conclusions that he was likely to cause harm and was gravely disabled.

## III. STANDARD OF REVIEW

"We review the superior court's factual findings in involuntary commitment . . . proceedings for clear error and reverse those findings only if we have

a 'definite and firm conviction that a mistake has been made.' "[3] "Whether those findings meet the involuntary commitment . . . statutory requirements is a question of law we review de novo."[4]

## IV. DISCUSSION

Alaska Statute 47.30.735(c) permits involuntary commitments "for not more than 30 days" if a court finds, "by clear and convincing evidence," that the respondent is (1) "mentally ill and as a result is likely to cause harm to [themselves] or others;" or (2) "gravely disabled." A.S. argues the court erred under both prongs of the statute because none of the evidence presented was specific enough to amount to clear and convincing evidence. As a result, A.S. contends it was legal error to conclude he met the statutory threshold for involuntary commitment. We do not address A.S.'s argument that he was not gravely disabled because we affirm the superior court's order committing him to API due to the likelihood that he would cause harm.[5]

A person is "likely to cause harm"[6] if the person "poses a substantial risk

---

[3]     *In re Hospitalization of Naomi B.*, 435 P.3d 918, 923 (Alaska 2019) (quoting *In re Hospitalization of Jacob S.*, 384 P.3d 758, 763-64 (Alaska 2016)).

[4]     *In re Jacob S.*, 384 P.3d at 764.

[5]     *See, e.g.*, *In re Hospitalization of Tracy C.*, 249 P.3d 1085, 1091 (Alaska 2011) (emphasizing statutory text that permits commitment on the basis of a grave disability *or* a risk of harm); *E.P. v. Alaska Psychiatric Inst.*, 205 P.3d 1101, 1110-11 (Alaska 2009) (acknowledging that commitment can be justified on the risk of harm to self or others alone).

[6]     AS 47.30.735(c). The standard for commitment is "likely to cause harm." AS 47.30.915(12) defines "likely to cause serious harm." We have explained that "even though the definitional language . . . is not identical to the commitment language . . . , we think the definitional language relevant to interpretation of the commitment language." *E.P.*, 205 P.3d at 1110. Even under this more stringent standard of *serious* harm, A.S.
(continued...)

of harm to others as manifested by recent behavior causing, attempting, or threatening harm, and is likely in the near future to cause physical injury, physical abuse, or substantial property damage to another person . . . ."[7] The harm posed must be active harm, meaning the person "has demonstrated the affirmative ability or inclination to inflict harm to self or another person."[8] Evidence of recent behavior "is clear and convincing if it produces 'a firm belief or conviction about the existence of a fact to be proved.' "[9] Put differently, evidence must be "greater than a preponderance, but less than proof beyond a reasonable doubt."[10]

A.S. argues "the evidence was insufficiently detailed to support the conclusion that [he] posed a substantial risk of harm to others . . . ." A.S.'s attorney stipulated that API's only witness, Dr. Pace, was qualified as an expert in psychiatry. Dr. Pace testified that A.S. assaulted API staff the day before the hearing, requiring police to be called to API and resulting in criminal charges against A.S. Dr. Pace testified that A.S. assaulted the staff after they attempted to "get him to take some medications." A.S. asserts that without more detail "regarding the staff members' interactions with [him] prior to the assault or what tactics were used . . . [,] [his] behaviors could have been a

---

[6]     (...continued)
met the statutory threshold for commitment.

[7]     AS 47.30.915(12)(B).

[8]     *In re Hospitalization of Luciano G.*, 450 P.3d 1258, 1262 (Alaska 2019) (quoting *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 376 (Alaska 2007), *overruled on other grounds by In re Hospitalization of Naomi B.*, 435 P.3d 918, 932 (Alaska 2019)).

[9]     *Id.* at 1262-63 (quoting *In re Hospitalization of Stephen O.*, 314 P.3d 1185, 1193 (Alaska 2013)).

[10]     *Id.*

reaction to being forcibly medicated — a circumstance unlikely to repeat itself outside the hospital." He also asserts that "[Dr.] Pace's testimony regarding A.S.'s verbal threats was similarly lacking in specificity." Finally, A.S. argues that, given "the highly unique context" of being "subject to significant restraints on his liberty and [being] placed in a foreign and coercive environment," the evidence was insufficient to establish a substantial risk of harm to others. A.S. urges us to conclude that because the environment in which he assaulted the staff is unlike the world outside API, Dr. Pace's testimony does not sufficiently demonstrate that A.S. would pose a risk to himself or others outside API.

The statute requires clear and convincing evidence of a respondent's "recent behavior causing, attempting, or threatening harm."[11] Dr. Pace described a violent assault on API staff members the day before he testified. He also provided specific details about the circumstances surrounding the incident. And he testified about A.S.'s "irritable mood that can escalate to verbal threats of bodily harm to staff." He described A.S.'s "delusions about death [and] bloody conspiracies." And Dr. Pace explained that the violent incident was a result of A.S.'s mental illness because he was unable to "respond rationally to attempts to de-escalate things."

The uncontroverted testimony from API's expert witness supports the superior court's finding that A.S. "has threatened hospital staff and assaulted hospital staff during this admission." The superior court clearly credited Dr. Pace's uncontroverted opinion that A.S's violent behavior was a result of his untreated mental illness. This finding was not clear error.[12]

---

[11] AS 47.30.915(12)(B); *see also* AS 47.30.735(c) (requiring clear and convincing evidence).

[12] *See In re Naomi B.*, 435 P.3d at 923 ("We review the superior court's
(continued...)

Furthermore, the superior court did not err by determining that A.S.'s assault on API staff the day before demonstrated by clear and convincing evidence that he posed an ongoing and substantial risk of harm to others.[13]  Having reasonably credited Dr. Pace's detailed testimony regarding A.S.'s assault the day before, the court clearly had a sufficient basis to conclude that A.S. had "demonstrated [an] affirmative ability or inclination to inflict harm to . . . another person."[14]  This act of violence alone meets the legal threshold for substantial risk of harm to others and is exactly the sort of threat of active harm that the statute requires a court to find before taking the drastic step of committing an individual to involuntary treatment in a psychiatric institution.[15]

## V.    CONCLUSION

We AFFIRM the superior court's order for 30-day commitment.

---

[12]    (...continued)
factual findings in involuntary commitment proceedings . . . for clear error . . . .").

[13]    *See In re Hospitalization of Jacob S.*, 384 P.3d 758, 764 (Alaska 2016) (whether factual findings meet legal standard is a question of law).

[14]    *In re Luciano G.*, 450 P.3d at 1263 (Alaska 2019) (quoting *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 376 (Alaska 2007)).

[15]    The threat of active harm "must be such so as to justify the social stigma that affects the social position and job prospects of persons who have been committed because of mental illness." *Wetherhorn*, 156 P.3d at 378.